The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Peter C. Kavanaugh presiding. Next matter is 4-22-0891, People of the State of Illinois, Appellee versus Jumar A. House, Appellant. Will counsel for the appellant please state your name for the record. Good afternoon. My name is Christina Law Merriman from the Office of the State Appellate Defender on behalf of Jumar House. Thank you. And on behalf of the appellee? My name is Connor Gettin for the state. Thank you. Thank you. Counsel Merriman, you may proceed. Thank you. May it please the court, counsel. Mr. House was convicted of attempt to murder and sentenced to 33 years in prison based on the identification of a single eyewitness. But since Mr. House's 2012 trial, two new witnesses, Corey Hunter and Mario Davis, have independently and separately come forward to testify that they witnessed the shooting and that Mr. House was not the shooter. And a third new witness, Ken Juan Murray, testified that Nicholas Pimell, the state's identifying witness, admitted to lying about Mr. House's involvement in the shooting in order to get leniency in his own criminal matter. But despite this compelling evidence of actual innocence, the circuit court denied Mr. House's post-conviction petition at the third stage, thus denying Mr. House the opportunity to present this new evidence at a new trial. But if this new evidence is not enough to warn a new trial, what is? How about believable evidence? Is the trial court in the position to decide whether it believes the witnesses at the third stage or not? Certainly. The judge in this case decided that they weren't believable. Well, there's a couple of things I'd like to note to Your Honor's question. First, the trial court found that Hunter and Davis's testimony was not newly discovered and did not make any credibility determinations about those two witnesses, suggesting that the court did not actually consider that testimony in deciding if Mr. House's evidence was conclusive in character. The court, however, did make an explicit determination of credibility concerning Mr. Murray, who's the witness, who's not an eyewitness, but is the witness who testified that Pimell admitted to lying about his identification of Mr. House. I think it's important to look at the court's reasoning and finding Mr. Murray's testimony not credible and that the court found that his recall of specific facts was not particularly credible. But the only fact that Mr. Murray could not recall was the precise date in which he had this conversation with Pimell. And his testimony was five and a half years after this conversation, and he was able to narrow it down to a short window, testifying that the conversation happened between at the end of February or early March of 2014, thus simply not recalling a specific date of something that happened five and a half years ago in no way affects his credibility where he was able to recall every other detail about that conversation. Now, I'd like to go back to the court's determination that Hunter and Davis' testimony was not newly discovered. Newly discovered evidence is testimony that is unavailable at the time of the defendant's trial and could not have been discovered sooner through due diligence. Now, the state admits that Mr. Murray's testimony is newly discovered, but claims that Hunter and Davis' is not. Now, the unrebutted evidence... Was that not quite accurate, counsel? Didn't the court say that a credible argument could be made that Hunter's testimony was not newly discovered? The same argument could be made for Ms. Davis? The court... Yes, the court made those findings as to Hunter and Davis, but not to Murray. But wasn't it clear that the court considered the testimony in its overall evaluation as the totality of the evidence at the third stage? I don't think that's clear from the record, given the court's finding that the evidence was not newly discovered. Indeed, the Supreme Court, when reviewing newly discovered evidence of actual innocence, goes through the requirements, starting with whether the evidence is new, whether it's material, whether it's non-cumulative, and then only if that evidence meets those requirements, then the court moves on to determine if the evidence is non-conclusive. Here, the court found that Hunter and Davis' testimony was not newly discovered, and because the court did not make any credibility determinations as to their testimony, it's not clear whether the court considered it in its determination of whether Mr. House's new evidence was conclusive. And when you compare it to the court's finding as to Mr. Murray's testimony, which was not disputed at the hearing to be new, where the court did make a specific credibility determination, it appears that perhaps the court only considered Mr. Murray's testimony when determining if Mr. House's evidence was conclusive. I think, nevertheless, this court, in reviewing the evidence on its own, can determine that the evidence was both newly discovered and conclusive. It was conclusive because— So we're supposed to second-guess the trial judge's determination, having seen and heard the witnesses who testified in court, and we're supposed to make that determination from a cold record? I think if this court finds that the court erred in finding that the evidence was not newly discovered, then this court should reverse the circuit court and remand for a new trial, as that determination was erroneous, as their testimony was newly discovered, as it was not available to Mr. House at his— But what if it appears that the court never said any such thing, mused about it perhaps being not newly discovered, but the record shows evaluated all the evidence in total, including what they had to say? Manuel? Presuming that the record supports that the evidence is newly discovered and that the court's determination was based on the conclusive factor, I still think that this court should reverse the trial court's decision, as the unrebutted evidence established at this hearing that Hunter and Davis witnessed this shooting, they saw the shooter's face, and they both testified that it was Mr. House. The state did not present any evidence to rebut that. Well, how about their questioning, which established that they were at best unclear or uncertain or maybe just lying about it, not worthy of belief for their explanations of why they didn't do anything earlier? So the state didn't present any evidence to suggest that these witnesses were not there. Counsel, you think the state didn't present any evidence? You're talking to a panel of people who are former trial judges. We don't have to wait for the state to present evidence. Trial judges can evaluate all the evidence that's presented. The defense called these witnesses to testify. If a trial judge doesn't find them believable and finds their stories cockeyed, we don't have to wait as a trial judge for the state to present contrary evidence, do we? There was really nothing in the record that the trial court could hang its hat on to determine that these witnesses were not credible. They did not present any testimony from any eyewitnesses that were present for the offense to say that these witnesses were not there and could not have seen what they had seen. How about just inherently not credible based upon their explanation for what they did and why they did it? Well, there's nothing in the testimony of my review of the record that would suggest that their testimony was not accurate. In fact, they testified consistently about many aspects of the shooting. The only difference in the trial testimony of the eyewitness, Nicholas Pimell, and their testimony about how this incident unfolded is who the shooter was. That's the crucial issue in this case. The evidence at trial turned on Pimell's identification. New evidence that places the trial evidence in a different light is, by definition, conclusive in character. Now that Mr. House has this new evidence, we ask this court to reverse the circuit court's decision simply so that he can have a new trial. The remedy here is not an opportunity for Mr. House to present this evidence to a new trier of fact, where that trier of fact can consider Pimell's identification, can consider all the state's evidence, but in light of the new evidence. Only then can a new trier of fact determine whether Pimell's identification still is credible. But the trial court here, the post-conviction court, denied Mr. House that opportunity and its reasoning for denying Mr. House's post-conviction petition and denying him a new triable. Some of the court's comments in its reasoning were either factually incorrect or just simply unreasonable. First, the trial court found that Davis testified that the shooter's skin was light, not dark, but even the state concedes now that that was not true because Davis did, in fact, testify that the shooter had a dark complexion. So the post-conviction court there misinterpreted the record. Second, as we mentioned before, the court found that Murray was not testimony. Didn't Hunter testify that he did not see Pimell at the shooting? He did. He testified that he did not see Pimell. Is there any question that Pimell was present at the shooting on this record? I don't think so, but Hunter also did. Is that a factor which the trial court could have considered in disputing whether or not Hunter is telling the truth? So Hunter testified that he did not see Pimell, but he did see Gates, and I think based on Hunter's testimony... Let me answer my question. Isn't that a factor which the trial court could consider in determining Hunter's credibility? It is a factor, but it must be considered in light of the rest of Hunter's testimony and whether there was anything else that would rebut Hunter's credibility. Hunter testified that he was across the street from where the shooting occurred, and it's unclear the state did not present any evidence that, based on Hunter's testimony of where he was, whether he could see Pimell's face or not. You're talking about the state presenting testimony. Why couldn't the court evaluate the testimony presented by the defense? Because this is not believable. So when there's defense testimony, when Hunter's testimony goes unrebutted, to speculate that the court would have to speculate that Hunter could not see what he could have seen unless there's evidence presented that Hunter should have been able to see Pimell. He didn't see Pimell, but it's unclear if Pimell's back was facing towards Hunter. He did testify that he saw Gates, and so clearly... What about Davis' description of the preparation of his affidavit? I'm sorry, Hunter's description? Davis' description of the testimony regarding Davis' credibility? I think, if anything, it bolsters his credibility in that it shows that Mr. House never approached Davis to write this affidavit. He, on his own accord... Well, who wrote the affidavit? Did Davis write it, or did Davis' girlfriend? His girlfriend wrote it, he reviewed it, and he signed it, which I think is frequent in a lot of these post-conviction cases, where sometimes post-conviction counsel will write an affidavit for a witness, that witness will before a notary. I don't think that's uncommon or in any way, you know, perhaps he had really bad handwriting. We have no idea why, but he did testify that he reviewed it and that the information contained with it was his... And it occurred to him he testified just over two years later to write it up? Is that correct? Excuse me? It occurred to him two years later to write up an affidavit? So Davis wrote his... Yes, he wrote his affidavit in 2014. Can you provide any explanation as to why two years later decided to do that? So he did explain his delay in writing his affidavit. He, at the time that he witnessed the offense, he testified that he did not write the affidavit right away due to his own negative experiences with the police, and he did not want to write his affidavit as a result of that. However, obviously, two years later, he had a change of heart, and so he wrote his affidavit. And indeed, in a lot of these actual innocence cases where there is newly discovered evidence, sometimes these affidavits come decades after an offense. In People v. Ortiz, in a third stage Illinois Supreme Court case, there, the new eyewitness came forward 10 years later, and the court found that this was sufficient to warn a new trial. I think, you know, I want to highlight... How about Davis' difficulty explaining about who notarized this affidavit? He could not recall the name of the notary, which I, again, don't think... Or where? About, or where are the circumstances? Isn't that a little unusual, given how many affidavits does Davis spell out? Your Honor, I think the record does not have any indication as to how many affidavits... How should I view this uncertainty about the affidavit, that this is an everyday occurrence he's going to be confused about? Again, this testimony, he wrote his affidavit in 2014, and he testified in 2022, so eight years later. I don't think it's unreasonable for a witness to forget the name of the notary, or perhaps exactly where he got the document notarized. Would it be unreasonable for the judge to instead view it as not believable, and the whole thing is a made-up story? The court did not make that finding. Indeed, as mentioned earlier, the court made absolutely no credibility determination as to Davis. There's no explanation as... And our position is that perhaps the court didn't even consider this testimony when determining it. Excuse me, but counsel, are you suggesting that the trial court is required to explicitly state those credibility findings? Isn't that inferred by the fact that they're at the third stage, and the court has to view the credibility, the veracity, and the reliability of that evidence, and then determine whether that trial itself? I don't think a post-conviction circuit court ruling on a third-stage post-conviction petition has to explicitly state, make a credibility finding about a specific witness. However, in this case, where the court found that Hunter and Davis's testimony was not newly discovered, and as directed by the Illinois Supreme Court in Coleman, that explained that typically trial courts first make determinations about the first... You keep saying the court found it was not newly discovered, counsel. For the third time, the court mused about it perhaps not being newly discovered, but never made that finding, did it? The court, and I quote, said, a very credible argument can be made that this testimony could not have been known to the defendant before, and at the time of the trial through the exercise of due diligence. That's specifically what the court found. Is that a determination that it's not newly discovered? I think it's a very strong suggestion that the court is finding that it was not newly discovered. But again, even if this court finds that the circuit court did find it was newly discovered, and we're just going on talking about the last factor, whether this evidence was conclusive in character, the critical question is whether this new evidence in light of the trial, or places the trial evidence in a different light. And indeed, the Illinois Supreme Court in people... No, I think Justice Leonard said it properly, undermines confidence in the verdict. And that puts it in a different light. And the trial court here said, no, this doesn't undermine my confidence. Isn't that what the court said? The court did not make any specific finding about undermining confidence. That language wasn't used. However, courts have consistently held that, yes, it's undermining confidence in the conviction, but also placing the trial evidence in a different light. The Supreme Court held that as recently as in People v. Robinson. But I think I'd like to highlight... Robinson wasn't a third stage case, was it? I understand that, but it was a discussion of what was required to show that evidence is conclusive in character, and obviously in a different context. I want to highlight the Supreme Court's analysis in People v. Coleman, because there the court did have concerns about the defendant's new witnesses, and explicitly found that they had concerns about the defendant's witnesses because of their criminal history, and because the new witnesses actually had conflicting testimony. However, there the court found that a new trial was still warranted, and the evidence was still sufficiently conclusive, because their testimony was consistent on one fact. And the testimony was consistent that the defendant was not the offender. And so because that was the critical issue at trial is who did it, the court remanded for a new trial, despite having some credibility concerns about these witnesses, because again, the remedy here is not an acquittal. It's a new trial so that this new evidence can be presented to a trier of fact to determine, after viewing all of this evidence together, hearing these witnesses live and making credibility determinations, whether the state can still meet its burden. And that's precisely what we're asking the court to do here, is to give Mr. House that opportunity and allow a new trier of fact to assess this evidence. If there's no further questions from this court, we ask this court to reverse the circuit court's decision and grant Mr. House a new trial so that a new trial, a new trier of fact can assess this evidence. Thank you, counsel. We have time in rebuttal. Counsel for the appellee, Mr. Gettman. May it please the court, counsel. My name is Connor Gettman and I represent the state in this matter. As the standard, or sorry, the standard review here in a third stage evidentiary determination, or third stage post-conviction petition, I'm sorry, involves, is manifest error. And to prevail on a claim of actual innocence, defendant must show that the evidence is newly discovered, material and non-cumulative, and such a conclusive character that would probably undermine the outcome, or probably change the outcome on a retrial. I'm sorry, your honors. This evidence, with regard to Davis and Hunter, this evidence was not newly discovered as it could have been found through due diligence prior to trial, at least arguably so. Davis testified that he was aware that defendant was implicated in this crime two weeks after he was arrested and charged, I believe. Defendant knew both Davis and Hunter through the club scene in Peoria. This crime did not take place in a dark alley or anything of the sort. It took place in a public nightclub outside of Peoria. Defendant should have been looking for potential witnesses to exonerate him if indeed he was not the shooter. And defendant himself admitted when he testified that Peoria is a small community and it would be easy for people to get in contact with either he or his family. Given that, it is this evidence, those two witnesses could have been discovered through due diligence previously, and thus I think the court's musing that it was arguable that the evidence was not newly discovered was not manifestly erroneous. But when we look at the conclusiveness prong as well, I don't think that the evidence was of such a conclusive character that it warrants reversal here. As Justice Steigman noted, there were several problems with both Davis and Hunter's testimony. Davis said that, once again, that two weeks afterwards after defendant being charged, he was ready to come or he wanted to get the truth out, he said. He was ready to come forward. But nonetheless, it took him over two years to type up and send in his affidavit. He said that he just randomly sent it to the courthouse. He could not remember key details about, you know, the notary or things of that nature. Also, he couldn't remember the time when the shooting occurred. I think there was an inconsistency between his affidavit and his actual testimony. I believe he said that the shooting was at 1240 on his affidavit, and then he said it took place anywhere between 1 and 2. When he was pressed on this, he said that his mind wasn't working very well during his testimony or something to that effect. I don't have the exact quote in front of me. I apologize. And then with regard to Hunter, Hunter said that prior to witnessing the shooting, he was not really paying attention to the shooting. He said that he saw Pennell there, but he didn't see the victim. And the victim and Pennell were standing side by side in the video. So if he was looking upon the shooter, it would be odd that he would not see necessarily both these men standing together. Further, he said he saw the victim running away from the scene, and I believe that both Pennell and the victim fled the scene together. They both left heading in the same direction. And then with showed or demonstrated that Pennell lied, and based on a close reading of the record, I don't think that's actually true. I don't think he established that Pennell lied. First of all, his story that he just met Pennell in a gas station after previously being in a bar fight with him, and then that Pennell would simply tell him all these details about his testimony sort of strains believability. These two men have been in a bar fight, but yet Pennell takes 10 to 20 minutes to talk through him about all these details. But as I said earlier, even if we take Murray's testimony, or testimony at face, it does not necessarily say that defendant lied. He said, and I want to read it just so that I don't get it wrong. He purportedly asked Pennell, why do you lie on defendant or why did you put him in jail, I believe. And then he said that defendant said that he did what he had to do and that he had a gun charge he was concerned about. So that doesn't establish that Pennell was lying about defendant being the shooter. It merely establishes that he was motivated to testify potentially based upon this gun charge. However, Detective Moore contradicts the fact that Pennell came forward because of his gun charge because he told Moore, or Moore testified that Pennell, that when he interviewed Pennell, and Pennell ID'd Mr. Hubbard, defendant as the shooter, that he was not aware of any charges that Pennell was facing and that he did not, and that he did not make any deals. So I believe when we take all of this into account that the evidence is not of such conclusive character that it warrants a retrial. If your honors do not have any questions of me, I will let my brief, I will stand on my brief and leave the rest of my time to opposing counsel. But counsel, I do have one matter. I guess, how do you address the fact that, or address defendant's argument that the trial court's finding that the state's evidence was overwhelming when it relies upon this one single eyewitness, and at least it's been argued that Pennell's credibility has been called into question. I think you addressed part of that issue, but what else do you have to address that the trial court's finding that the state's evidence was overwhelming was unreasonable or manifestly erroneous? So the lack, or in Coleman, they said that the evidence was not overwhelming because they didn't have forensic evidence. And while we don't have forensic evidence in this case, we do have something that was not present in Coleman, which is video evidence, video evidence that backs up version of events, really. And then we have an additional video, though it may not exactly, the video of the shooting may not exactly show that House was the shooter conclusively. We have a video of House being arrested for DUI later that night. He's wearing the same, he's wearing very similar clothes. There is a insignia, I believe it was on his sleeve. I don't know, like a symbol, that symbol, a similar symbol can be seen in the video. The court independently assessed both these videos and concluded that it matched up with the defendant being the shooter. So I think that is sufficient. Thank you. Thank you. Counsel, rebuttal? Thank you, Your Honor. I'd like to just start where the state left off about the trial evidence in this case. While, you know, as Your Honor noted, there's a single eyewitness identification by Pinnell, and there was these two videos, where the state now claims that there's a similar symbol on both of the jackets in the video. However, I, at first, I encouraged the court to review both of these videos. And as the third district appellate court noted in remanding this case for a third stage hearing, it is nearly impossible to identify the shooter in the security footage due to the low light of the camera, low light outside, it was dark out, and the angle of the camera. Indeed, in the DUI video, Mr. House is seeing a black jacket with some sort of embroidery on the sleeve. However, in the security footage, can't tell whether that's some sort of light colored patch, whether it's stitching in the jacket, or if it's even just light reflecting off of all these different ambient lights off the leather jacket. Indeed, we don't know what that symbol is. And you can't see what that symbol, if anything, is on the sleeve in the security footage. And so that's why this case really relies on Pinnell's identification. With respect to the testimony- And counsel, excuse me, going into that for just a moment, would you really classify this as his credibility being called into question? With respect to Murray's testimony? With respect to Mr. Pinnell, as it relates to Mr. Murray. Yes. And so, Murray ran into Pinnell at a gas station, asked Pinnell, why did you lie on Jumar? I think is how he said it. And he said, I did what I had to do. They go outside quickly. They didn't want to talk about it in the gas station store. And then Pinnell explains what he meant by that. He says, I couldn't go to jail for this gun case. And the record supports that Pinnell did have a pending gun case. He indeed received an offer on this case from the state. And he ended up being sentenced to the minimum prison sentence, even though he was facing 10 years in prison. So yes, I think Murray's testimony does question Pinnell's credibility in that it shows that he did have a motive to lie. And this motive to lie was not explored at trial. There was no evidence that would suggest that he was testifying for a deal. The only evidence at trial was that he did have a pending case, but that was it. Additionally, with respect to the state's arguments about Davis's testimony, it being not credible because of this time discrepancy, it was a 20 minute difference. And again, he's testifying a decade after this happened, 20 minutes. This case happened sometime after midnight, around 1 a.m. His testimony was not inconsistent with that. Additionally, the state mischaracterizes Hunter's testimony. He did not say he was not paying attention to the shooting. The only time he said he wasn't, the state asked Mr. Hunter what kind of make and model the car that the shooter was driving. And he says, I don't know, it was a black car, I wasn't paying attention to the model of the car. That's the only time he testified he wasn't paying attention. Indeed, he saw the shooter's face and he testified that it was not Mr. House. Additionally, I want to clarify, Hunter, while he did not see Pennell, he did testify that he saw Gates, the victim of the shooting. And he said that he saw Gates near his car and that Gates was with two other people, which is consistent with everyone's testimony about this incident, anyone who's ever, and consistent with the security footage. And so even though he couldn't see that one of those people was Pennell, he did testify consistently that Gates was with two other people. And again, we don't know if Pennell was facing Mr. Hunter from his perspective across the street. So I see that my time is up. I ask your honors to reverse the circuit court's decision and to remand this case for a new trial. Thank you, counsel. Thank you both. Court will take this matter in advisement. And at this time we stand in recess.